Good morning. Madam Clerk, will you call the first case? Matthew Daniels Good morning, Your Honors. My name is Matthew Daniels. I represent the appellant Carmelita Madison. I would be requesting 15 minutes for argument and 5 minutes for rebuttal. Jocelyn Cheevee Good morning, Your Honors. May it please the Court, counsel? The fitness statute is clear that during a fitness hearing the rules of evidence apply and are not relaxed. In this case, 66-year-old Carmelita Madison was charged with a Class A misdemeanor offense of simple battery. During the pendency of the proceedings in the Trial Court, Branch 29, the Trial Court Suis Fonte ordered a fitness evaluation. A fitness hearing was subsequently held on May 9th of 2013 at 26th and California before Judge McHale. At that hearing, Ms. Madison's ability to understand the nature of the proceedings or her ability to assist counsel. This Court should reverse the finding of the Trial Court, not only because jurisdiction exists to hear this appeal, but because reversal is warranted on the merits. Jocelyn Cheevee So let me ask you, Mr. Daniels, when Ms. Madison refused to participate in the second evaluation, what should the Trial Court have done? Daniel Daniels When you speak to the second evaluation, I want to make sure you're clear. Jocelyn Cheevee We had the first evaluation where she was found unfit. Daniel Daniels Correct. Jocelyn Cheevee And she was referred because the evaluation was more than 45 days old. Daniel Daniels Right. Jocelyn Cheevee And she refused to cooperate. What should the Trial Court have done to move the case forward? Daniel Daniels I would imagine that the Trial Court could have either requested that entering order requiring Ms. Madison to further participate and answer Jocelyn Cheevee Well, there was an order to that effect, right? Daniel Daniels There wasn't. I believe that was part of the, there was an order eventually to that effect. As far as whether the Trial Court was needed to take any additional steps to require additional participation, I don't know if the Trial Court necessarily needed to do so. Jocelyn Cheevee Well, how can the case go to trial when there's been a previous finding of unfitness that is now stale? The defendant refuses to participate in a second fitness evaluation. Defense counsel, as far as I can see from the record, was not stipulating that Ms. Madison was fit to stand trial. So how do you move the case forward? Daniel Daniels I would imagine that putting on the hearing was still a permissible step that the Trial Court could have taken. On this record, even in a situation where the defendant, like Ms. Madison, has not fully cooperated in the second evaluation, certainly the expert could have relied upon the underlying records that he had and reached an opinion on that basis. On this record, he said he didn't. Jocelyn Cheevee I thought the position you're taking on appeal is what the second expert relied on wasn't sufficient in any event because it was all hearsay. Daniel Daniels That's true. I understand that under the fitness statutes that the failure to cooperate with the evaluation process is a basis for making a finding regarding whether a physical or mental disability exists. The statute doesn't seem to indicate that it creates a finding that she is, as a matter of law, unfit. I don't know if, I don't have an immediate answer as to what the Trial Court should have done differently if it should have done something different in this case. Regarding the issue of jurisdiction here, there's no dispute between the parties that Ms. Madison, during the pendency of this appeal, was subsequently found fit to stand trial with medication. That order of fit to stand trial with medication did not strip this Court of Jurisdiction to hear the appeal for one of two alternative reasons. First, if we consider the procedural posture of this case, we are not on appeal from a final judgment and a disposition of Ms. Madison in your case is still active. We appeal immediately on the issue of the finding of unfit to stand trial. Consequently, that order of fit to stand trial with medication is still in force against Ms. Madison. It requires her to continue to take psychotropic medications. Teri Manolio Where in the record is that order that requires her to take psychotropic medication? I see the order saying that she's referred to the trial court. I didn't see any order that the trial court entered that requires her to take that medication. Stevenson I believe that that was in the supplemental common law record. The written order does say fit with medication. Teri Manolio The order says I find her fit with medication. It doesn't say you must continue to take the medication, does it? Stevenson It does not say that in the transcript. The written order does say that. And I would remind the Court there is no dispute between the parties, though, on this appeal that she was found fit to stand trial with medication. Kennedy And you want to go to trial? Stevenson Yes. Kennedy And so why are we here? If you're going to go to trial, what is there to appeal? Stevenson There is still the finding of unfit to stand trial, which was Kennedy But that's been superseded, hasn't it? Stevenson Pardon me? Kennedy It's been superseded. Stevenson It was. Kennedy So what does that mean? If you go to trial, and after the judgment is entered at the trial, could you still appeal that earlier order that you wanted to appeal? Stevenson Had we not had this appeal? Kennedy Right. Stevenson I would imagine that would be true. At the time that the appeal was taken up, though, it was not a certainty that Ms. Madison was going to be convicted. Kennedy I don't disagree with that. But what I'm talking about is obviously mootness. And so I'm trying to put my finger on why this case is going forward now. I mean, this appeal is going forward when you have what you want, which is a trial, and that other order, it doesn't mean anything anymore. Stevenson Well, it does for Ms. Madison in the interim until she has been officially relieved of that obligation to have to continue taking medication. She could, if she has not been in compliance with that order, I would imagine that that would be a basis for some sort of remedial action to be taken against her. So for her, it is still an active order. Additionally, even if this Court were to hold that the fit-to-stand trial with medication order rendered the appeal moot, the jurisdiction still exists here under the collateral consequences exception to the mootness doctrine. Here, although the unfit-to-stand trial order has ceased, there remain collateral consequences that survive that are likely to be redressed by a favorable judicial determination. The clearest direct collateral consequence that Ms. Madison suffered here that we can point to is that by the end of the fit-to-stand trial, she is now prohibited under the void card statute from being able to pursue the record. Kennedy Where in the record does it show that she's even interested in getting FOIA 8D card? Stevenson It's not in the record, and there wouldn't have been a foreseeable reason to put it into the record. Kennedy Well, but anybody can make that argument. I mean, anybody can say. Stevenson Well, not anybody can make the argument, Your Honor. Kennedy Everybody could. Anybody who is in this situation could just raise and say, well, this is going to prohibit me in the future. Stevenson If we apply RITA P. and Alfred H.H., which hold that a case-by-case determination is required in examining whether the collateral consequences exception exists, certainly in a situation, if we took, for instance, a defendant in Alfred H.H. who was a convicted murderer and had multiple previous involuntary commitments to mental institutions, and if he had been appealing an unfit-to-stand trial order and saying, now I can't get a void card, certainly there would be no merit to say that the collateral consequences exception exists because he would already be barred. Here, though, if we look at the circumstances of Ms. Madison, we're dealing with a senior citizen who's never been convicted of a crime, previous to this order, had never been adjudicated mentally incompetent by a court of law. That is a direct cognizable consequence that was placed upon her by virtue of the finding of unfit-to-stand trial. But that would lead to a finding that, as a matter of law, when a defendant does not have a criminal background, that a finding of unfitness will always remain alive as an issue on appeal because that defendant can't get a void card. I mean, it sounds to me that that's reasoning that's contrary to Alfred H.H. I would disagree, and I would further direct the Court's attention to people like Ms. Madison versus Holt from the Second District, which is directly on points in this case. In Holt, a misdemeanor defendant was found unfit-to-stand trial and was subsequently restored to fitness during dependency of the appeal. The collateral consequences exception was applied there precisely because it was a defendant who had never been convicted of a crime, never been previously adjudicated mentally incompetent, and therefore, because now under that finding of unfitness, the void card statute was a prohibition on her being able to exercise a constitutionally protected right, that the relaxing the mootness doctrine under the collateral consequences exception was appropriate. And I would submit that as the same case that we have before this Court. And where is that in your brief? It is in, I believe, both our opening brief and our reply brief. I don't believe that the State responded to it in its brief, but it's in both of our briefs. Turning to the merits of the appeal itself, I would remind the Court that there were three issues on the merits that we raised. The State in its brief did not respond to any of those issues on the merits, and I would submit that those issues have therefore been conceded. Additionally, one other preliminary point that I would like to make regarding the merits would be to remind the Court of a couple of basic underlying bedrock evidentiary principles that sort of are constant throughout each of these issues on the merits. The first one is that it's certainly axiomatic that an expert witness can testify about underlying facts or data that are the basis of the opinion. The theory, of course, would be that in order to testify about that hearsay, there first has to be an opinion that the expert is testifying to. The second bedrock principle is that where that first predicate is satisfied, that nevertheless the hearsay that is permitted to be elicited during the hearing is nevertheless admitted for the limited purpose of explaining the basis of the opinion. And I would like to just go back a little bit to the mootness. Sure. You raised other arguments besides the FOIA card. That's true. And as to the other arguments, it doesn't seem that you have as much support. I mean, you have the whole case you're saying that's similar to our case, but what about the other basis you say? Under the collateral consequences exception? Yes. Additionally, under the, regarding the collateral consequences exception, we note that there would be a variety of other sorts of Again, there wasn't anything, this is speculation, if she wanted to get a license for something. I mean, of course it's supposed to start speculating what somebody might do in the future. A 66-year-old person is going to all of a We're supposed to speculate and base our decision on the speculation. I understand your point, Your Honor. But under both Alfred H.H. and Rita P., there is not a requirement that the defendant make a specific showing that she was going to, in fact, seek the particular licensure in question or was going to take full advantage of the civil disability that is now, of the right or privilege that has now been limited by virtue of the civil disability. If we look at most recently with Rita P., what the Supreme Court held was that it has to be something that is directly linked to the finding that's at issue, and it's a right that could have been exercised, but for the improper finding. And that's the case here. There is no requirement that Ms. Madison needed to put into the record that she was planning on getting a firearm or getting a optician's license or what have you. And at a certain level, that would seem to make sense because one is not looking to essentially tell their life story at a fitness hearing. The issue is whether they're able to understand the nature of the proceedings and whether they can assist counsel. If it's all right, I'd like to turn back to the merits. Our first point on the merits is that the trial court erred in permitting Dr. Cooper, who was the clinical psychologist who testified, to discuss the hearsay that he considered during the course of the examination because he had no expert opinion in this case. He testified that he had clinical concerns, but he also testified multiple times, both on direct examination and cross-examination, he had no opinion. And therefore, if there was no opinion, there was no basis for permitting that hearsay to be admitted in the first place. That error was compounded when the trial court then used that hearsay as a basis for finding, really not just a basis but the cornerstone for his finding that Ms. Madison was unfit. If we look at the findings and facts and conclusions of law that Judge McHale made at the conclusion of the testimony, he says that there was an abundance of evidence that Ms. Madison was unfit. I don't want to cut you off, but it just seems on the merits, the State hasn't responded. I mean, they did file something just the next few days, last day or two, but it's a little late. They didn't raise anything in their brief, did they? They did not, Your Honor. If this Court wishes, I would rest on the brief if the Court ---- Correct. I can speak to Gavin if the Court wishes. Regarding Gavin, that case reaffirms those two bedrock principles that I discussed a moment ago. If you don't have an expert opinion, then the hearsay should not be admitted. And even if this Court is to accept that there was opinion testimony, whether it be expert opinion or lay opinion, we disagree on both those points. The briefs, I believe, make that pretty clear. Even if that were the case, that it was an opinion, it would still err for Judge McHale to then use that as substantive evidence. And that is another one of the teachings from Gavin. Here, almost the entire findings and conclusions of the law of Judge McHale regarding the question at issue was that he was using that hearsay as substantive evidence. If this Court doesn't have any other questions regarding the merits, I'll reserve the balance of my time.  Thank you. Thank you. There wasn't much balance left. Thank you very much. May it please the Court, Assistant State's Attorney Jocelyn Cheeve for the people of the State of Illinois. In this case, the defendant continuously and repeatedly refused to cooperate with the evaluation process in order to determine whether or not she was fit to stand trial. In April of 2012, the defendant was charged with one count misdemeanor battery. The case proceeded to the branch courts, at which time there was a bona fide doubt as to whether or not the defendant would be fit to stand trial. The trial court ordered two BCX examinations, for which the defendant did not appear. And at the third BCX examination, Dr. New concluded that the defendant would be unfit to stand trial. Dr. New's report became stale as several continuances transpired, and the trial court was forced to order a fresh BCX examination. Over the next three BCX examinations, the defendant either refused to cooperate and answer the psychiatrist's questions or did not appear. So I'll ask you the same question. When the defendant refused to cooperate with the order referring her for a fitness evaluation, what should the trial court have done? The people would maintain that the trial court properly considered the evidence before it. It had made five BCX examinations and requests that the defendant comply, and the defendant either did not show up or refused to cooperate. The posture of the parties in this case is reversed, because usually it's the state relying on the presumption of fitness, saying this defendant is fit to stand trial, and it's the defendant who's saying we want the defendant evaluated and arguing that the defendant is not fit to stand trial. So it's a little confusing because now the state took on the burden of establishing unfitness and did so with an expert who couldn't render an opinion on the subject. That is correct, that the expert could not render an opinion as to the issue of fitness. However, the parties did stipulate that Dr. Cooper was an expert in the field of forensic clinical psychology, and he stated that he did have opinions related to the defendant as an expert in that field. He had clinical concerns that based on his interactions with the defendant, based on Dr. New's report, based on the records that he had examined, that he had clinical concerns that the defendant suffered from a mental illness and that could cause possible concerns related to a finding of fitness. The trial court took that into consideration in addition to its own observations of the defendant and the defendant's refusal to cooperate in the examination process and ultimately rendered a finding of unfitness. And it is that order which the defendant is appealing. However, the people would maintain that this issue is moot as the defendant has now been restored to fitness and been found fit to stand trial. Now, is there an order requiring Ms. Madison to continue to take the medication that's been prescribed for her? There is a written order in the Supplemental Common Law Record. However, after the people filed their brief, we received the Supplemental Report of Proceedings, at which time it included the restoration hearing, where both the state and the defendant stipulated that an expert would testify excuse me, two experts would testify that the defendant was fit to stand trial. There was no mention of any psychotropic medication. And furthermore, if you look to Dr. New's psychological summary notes in the Supplemental Common Law Record, he stated that he met with the defendant on October 7, 2013, and the defendant specifically told him that she had stopped taking psychotropic medication several weeks prior. Dr. New found the defendant fit to stand trial and stated she was currently not taking any psychotropic medication. Therefore, as stated in the defendant's brief, when a written and an oral pronouncement conflict, the oral pronouncement controls, and therefore, the defendant has been found fit to stand trial. And as such, this case is rendered moot. A case is rendered moot when the issues before the trial court no longer exist due to intervening events, and it would be impossible for this court to offer any type of effective relief. Here, the defendant is now fit to stand trial, and there is no effective relief which this court can grant upon the defendant. Any opinion would be strictly advisory. The defendant invokes the collateral consequences exception. In order to invoke the collateral consequences exception, there must be a specific identifiable collateral consequence, which is solely attributable to the order at issue. Well, how would you respond to the decision in Holt? Holt is completely inconsistent with the positions taken in Ray Rita P and in Alfred H.H. The Holt case specifically and automatically applied the collateral consequences exception, stating that the defendant could face adverse legal consequences in the future, specifically related to an FOID card. However, the Holt court did exactly what in Ray Rita P and Alfred H.H. warned against. The collateral consequences exception cannot be applied automatically to first-time findings of unfitness, and these cases need to be examined on a case-by-case, fact-specific basis. Here, if we look at the defendant's prior history, we see she has a history of mental illness. She has, by her own admission to Dr. New, four prior hospitalizations for psychiatric reasons. Furthermore, in Dr. New's report, Restoring Her Fitness, he stated she suffered from an unspecified schizophrenic disorder and psychotic illness. Therefore, statutorily, based on the FOID statute, based on the other licensure and employment opportunities which she's listed, she would be precluded from obtaining an FOID card. The FOID statute states if a person has been a patient of a mental health facility within the past five years, they are precluded from obtaining an FOID card. Here, it is the defendant's own history of mental illness, her own history of hospitalizations, and not solely this order at issue here today, which would preclude her from obtaining that FOID card. What about the other arguments they make with regard to collateral? In regards to the other licensure and employment opportunities, the same statutory preclusions would apply. The various optometry, physical therapists, and other licenses also state that if the applicant suffers from a mental illness, they are precluded from obtaining the various licensures and employment opportunities. As such, there is no collateral consequence which is solely attributable to this order which is being appealed here today. There is no effective relief which this court can grant upon the defendant. Well, Ms. Madison also argues that there is the ongoing burden, financial and physical, of being required to take this medication. And pay for it. Most importantly, it is important to keep in mind that the defendant is appealing the May 9, 2013 order which found her unfit. That order did not require her to take medication. It was a subsequent order, October 28, 2013, I believe, which if this court believes she is required to take medication, then it would be that order which would have required her to do so. Furthermore, she is not appealing that order. Therefore, this is not the proper relief for her to be relieved of the burden of taking medication. Furthermore, the people would point to the fact that the defendant herself stated to Dr. New that she had stopped taking the psychotropic medication of her own volition several weeks prior to her meeting with the doctor. Therefore, the defendant is not, if she voluntarily stopped taking the medication, she cannot now claim that it's a burden to take the medication when it was her own choice to stop taking it. With assuming that they have appealed now, went to trial, is there any way they could, in your, you're saying they could never appeal that earlier ruling that they've appealed now? I mean, the only time to appeal it would be now. They can't do it after a trial. That would be correct. No matter what happened in the trial. Correct, yes. Therefore, since there is no effective relief, which this court can grant upon the defendant, and as all of the possible collateral consequences which the defendant has listed already exist due to her history of mental illness and prior hospitalizations, we ask that based on the aforementioned arguments and those arguments in our brief, that this court dismiss the instant appeal as moved. May it please the court, your honors, I have just a few points of rebuttal. First, as a clarification, the state contends that the additional transcript that had the restoration to fitness was not filed until after the state had filed its brief. In fact, the opposite is true. The supplemental report of proceedings was, a motion was filed by the defense on February 14th of 2014. This court granted that order, I believe, 11 days before the state filed its brief. But the order you're appealing from obviously was prior to that and did not have any language with regard to taking medication. That's true. Next, regarding people versus Holt, I'll remind the court that the state did not address Holt in its brief and therefore have waived any argument under 341H7. Additionally, we do not dispute that this is a case-by-case analysis. And contrary to the state's assertion, what we are not asking for is a per se ruling that Ms. Madison is entitled to the collateral consequences exception. When the state speaks about the fact that she had a history of mental illness, what we have to remember is that information speaking to that history of mental illness in the record was not competent evidence at this hearing. Additionally But the state's point is that Ms. Madison's admitted prior history of mental illness would have precluded her from getting a FOID card or engaging in any of these professions under any circumstances. It, well, with regard to, if I could focus on the FOID card statute, for previous mental institutionalization, before Judge McHale entered the order on the fitness finding, she would have still been eligible to apply for the FOID card. Additionally, she would still have had a statutory remedy under the FOID card act to have essentially reconsideration of a denial on the basis that her mental health had been restored. That statutory remedy, though, goes away once there has been the finding of unfit to stay in trial. Under the FOID card statute, once you've been found unfit to stay in trial, you may not possess a firearm legally under the FOID card statute. Additionally So is your argument that once there's a finding unfit to stay in trial, that's always appealable at any point? It never goes away. No matter what happens. There is no mootness of it. In the specific misdemeanor case? Take a misdemeanor case. I guess what I'm trying to make sure I understand correctly is could Ms. Madison come back a couple years from now, for instance, and appeal this misdemeanor finding of unfitness? Right. The unfitness, you say, is going to have that finding, even though you're going to trial and everything else. It's always going to be there and it's always going to have an effect potentially on her for this, that, and the other thing. I don't believe that she would have a perpetual right to come back in courts to ask to have the unfit to stay in trial. Now is the time to do it. Even though you're going to trial. Right. Or she could be found not guilty at trial, in which case then she's in an awkward predicament where although she has been found not guilty, she's still unfit to stay in trial and she would still have the same consequence placed upon her. Although that became, I mean, after a certain amount of time, that order was no longer, that's why there was a second hearing. That's true. But the finding of unfit to stay in trial has been entered. And that finding, if we're focusing on the Foyt card statute, is all that is necessary for a denial of an application for a firearm. So if she had not appealed it now, she could have been in a position where she won a trial and she would still have that direct limitation on her constitutionally protected rights. But that would be a per se rule in any case involving a defendant without a criminal background who is found unfit to stay in trial. Right? And the court would always say, oh, there's a collateral consequence. If she had previously been adjudicated mentally incompetent, I believe that that would continue to be a bar as well. So I would disagree that it would create a per se rule. Well, let's say in this situation where it's your first time, isn't it a per se rule? On these facts, I believe that she satisfies the collateral consequences exception. I'd be hesitant to say that there couldn't be another case with similar facts and that the defendant didn't have a previous criminal conviction or previous finding of unfit to stay in trial. That there couldn't be some additional facts out there that could nevertheless act as a bar to extending the collateral consequences exception. And we shouldn't consider the hospitalization? I would, in this case, the hospitalization. Or what the new report stated, some of those facts? I would imagine that to the extent that those facts are in existence, that would still, if she had the ability to have this court review the merits of her appeal, that she could still exercise the statutory remedy that is in existence under the Floyd card statute to permit reconsideration. The Floyd card statute with that statutory remedy doesn't give her an absolute right to get the firearm then. It allows simply for a process by which that mental health determination that was a limit before is now being reconsidered on all the facts and circumstances. If there are no further questions from the court, I would ask that this court reverse the finding of the trial court. Thank you very much. Thank you very much. Appreciate the arguments of both counsel and your briefs and the additional briefing that you submitted recently and we'll take it under advisement. Thank you. Thank you.